UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Bathurst D. Peachy,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Bathurst D. Peachy, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacts business in this division.

## PARTIES

9. Plaintiff, Bathurst D. Peachy, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Equifax credit file; and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## **FACTUAL ALLEGATIONS**

15. On June 27, 2023, Plaintiff was involved in an automobile accident, which caused Plaintiff's 2021 Hyundai Tucson to be deemed a "total loss" by his insurance company, Progressive Insurance (hereinafter "Progressive").

16. Progressive contacted Hyundai Finance (hereinafter "Hyundai") and obtained a payoff amount.

17. Thereafter, in July 2023, Plaintiff received a check from Progressive in the amount of $25,000.00.

18. Upon receipt of the check from Progress, Plaintiff contacted Hyundai for the payoff amount and was told the payoff amount was $18,942.23.

19. Before Plaintiff could forward the payoff check to Hyundai, Hyundai contacted him on August 3, 2023, and told him that if he did not immediately make a payment of $371.92, his credit would be ruined. In order to protect his credit, Plaintiff immediately made the payment of $371.92. At the time he made the payment, Plaintiff was assured by the Hyundai Finance agent that after the payoff was made, he would be refunded the $371.92 payment.

20. On or about August 3, 2023, unbeknownst to Plaintiff, Hyundai sent a payoff letter to Progressive stating the payoff amount was $25,182.52. In its letter, Hyundai stated that upon receipt of $25,181.52 as the full proceeds of the insurance policy covering the Hyundai, Hyundai agreed to release and transfer all of its rights, title, and interest in and to the vehicle to Progressive, and that under the lease agreement, a total loss automatically triggered termination of the lease.

21. Unaware of Hyundai's increased payoff demand, on or about August 19, 2023, Plaintiff sent a check in the amount of $18,942.23 to Hyundai.

22. On August 23, 2023, Hyundai emailed Plaintiff that his payment of $18,942.23 was processed on August 19, 2023.

23. Thereafter, Plaintiff received a check in the mail from Hyundai refunding the entire amount of $18,942.23. However, there was no correspondence or explanation of why the check had been refunded.

24. Following receipt of the check, Plaintiff contacted Hyundai and was told by a Hyundai representative that Hyundai had made a mistake and that the correct payoff amount was actually $25,000.

25. In September 2023, Plaintiff received a call from Progressive stating that Hyundai was demanding an additional $127.16 in order for the account to not report as delinquent.

26. On September 14, 2023, Plaintiff paid the additional $127.16 to Hyundai.

27. On October 10, 2023, Plaintiff mailed a check to Hyundai in the amount of $25,000.00, which was processed on October 14, 2023.

28. After receipt of Plaintiff's $25,000 check by Hyundai, Plaintiff was informed that Hyundai was demanding an additional $181.54 to satisfy the lease. On November 15, 2024, Plaintiff made the $181.54 payment.

29. On or about January 4, 2024, Plaintiff obtained a copy of his Equifax credit report online. Upon receipt of his Equifax credit report, Plaintiff discovered that the Hyundai Motor Finance account was reporting inaccurately.

30.     On or about January 26, 2024, Plaintiff sent a written dispute letter to Equifax **("First Dispute")** wherein Plaintiff informed Defendant he had obtained a copy of his credit report and Hyundai Motor Finance account number xxxxxx 1549 (hereinafter, the "Account") was reporting incorrectly as paid late.  Plaintiff specifically informed Defendant the Account should be reporting as paid in full with a zero balance.  Plaintiff stated the car was totaled in a car accident, his insurance company obtained the payoff and Plaintiff sent in a check for $25,000.  Plaintiff included a copy of the check with his First Dispute.  Plaintiff requested Defendant remove all late payments and show the balance as zero.

31.     Defendant received Plaintiff's First Dispute on February 3, 2024.

32.     On or about February 9, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into his First Dispute.  The Account continued to be reported on Plaintiff's Equifax credit report, with a balance of $2,764, a past due balance of $1,609, and a scheduled payment amount of $371.00.

33.     On or about March 6, 2024, Plaintiff sent a second written dispute letter to Equifax **("Second Dispute")**.  In his letter, Plaintiff again disputed the Account stating the car had been totaled in a car accident and after his insurance company obtained the payoff amount, he sent a check to Hyundai in the amount of $25,000.  Plaintiff stated a copy of the check was enclosed and requested Defendant update the Account to show a zero balance.  Plaintiff also requested that Defendant remove all late payments as the Account was not paid late.

34.     After mailing his Second Dispute, Plaintiff realized he had forgotten to include a copy of the check. Accordingly, on March 9, 2024, Plaintiff sent another copy of his Second Dispute along with a copy of the check.

35.     Defendant received Plaintiff's Second Dispute on March 14, 2024.

36.     On or about March 12, 2024, Defendant sent Plaintiff a letter stating it was "unable to locate a credit file with the identification information [Plaintiff] provided" and requested a copy of Plaintiff's Driver's License and Social Security Card.

37.     Five days later, on or about March 17, 2024, Defendant sent Plaintiff another letter stating it was "unable to locate a credit file with the identification information [Plaintiff] provided" and requested a copy of Plaintiff's Driver's License and Social Security Card.

38.     On April 8, 2024, Plaintiff returned Defendant's March 17, 2024, letter with copies of the front and back of his Driver's License and Social Security Card.

39.     On or about May 23, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into his Second Dispute showing that the Account had been updated to show a $0 balance and "Paid in Full."

40.     During the time Defendant was reporting the inaccurate Hyundai Account information, Plaintiff's credit report was viewed by Wells Fargo Card Services and Plaintiff did not receive an offer of credit.

## COUNT ONE
(Fair Credit Reporting Act)

41.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 40 hereinbefore as if fully set forth herein.

42. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

43. Defendant negligently failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

44. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, loss of credit, loss of credit opportunities, anxiety, worry, fear, loss of sleep, family discord, anger, frustration, physical pain and sickness, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

45. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

46. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

### COUNT TWO
(Fair Credit Reporting Act)

47. The Plaintiff adopts the averments and allegations of paragraphs 15 through 46 hereinbefore as if fully set forth herein.

48. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

49. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

51. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, loss of credit opportunities, anxiety, worry, fear, loss of sleep, family discord, anger, frustration, physical pain and sickness, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

54. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com
Attorney for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169